IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| DARRYL K. TOLIVER, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil No. **04-309-JPG** |
| | ) | |
| **FAISA AHMED, PAM GRUBMAN,** | ) | |
| **and GARY GERST,** | ) | |
| | ) | |
| Defendants. | ) | |

## REPORT and RECOMMENDATION

This Report and Recommendation is respectfully submitted to District Judge J. Phil Gilbert pursuant to 28 U.S.C. §§636(b)(1)(B) and (C).

Before the court is a Motion for Summary Judgment filed by defendants Ahmed and Gerst. **(Doc. 125)**. The motion is supported by a number of exhibits, including an affidavit, and a memorandum of law, **Doc. 129**.

Defendants served upon the pro se plaintiff the notice required by ***Lewis v. Faulkner*, 689 F.2d 100, 102 (7th Cir. 1982)**. **(Doc. 126)**. Plaintiff filed a Response, to which he attached various exhibits. **(Doc. 131)**.

## Nature of Plaintiff's Claims

Plaintiff Darryl Toliver is an inmate in the custody of the Illinois Department of Corrections. He filed suit under 42 U.S.C. §1983, alleging that his Eighth Amendment rights were violated by defendants' deliberate indifference to his serious medical needs. As construed by the court on preliminary review, he alleges that, while he was incarcerated at Menard Correctional Center, "in the summer of 2002, he began experiencing stomach pain and dizziness; over the next several months, his condition worsened to include chronic vomiting and chest pain. He alleges that although he was seen periodically at the health center, Defendants

1

failed to do more than prescribe antacids, telling him to "stop faking" his condition. More than 18 months after his symptoms began, Plaintiff was finally diagnosed with a hiatal hernia. Despite this diagnosis, Plaintiff alleges that Defendants refused to provide him with treatment for his condition, in violation of his rights under the Eighth Amendment." **See, Doc. 7, p.1.**

With leave, plaintiff has filed an amended complaint, **Doc. 27.** He alleges that he began having stomach pain and dizziness in June, 2002. **¶4.** In general, he complains that, for over a year and 9 months, he was either given the wrong medication or no medication at all, and that he has been denied follow-up visits to an outside specialist. **¶52, 53.** In December, 2003, a hiatal hernia was diagnosed and he was prescribed Prilosec. **¶48.** He alleges that he has continued to suffer from stomach pain and vomiting, and he alleges that defendants have misdiagnosed his medical problem, have discontinued any efforts to find the proper diagnosis, and have disregarded the diagnosis and recommendation of a specialist. **¶57, 58**.

The specific allegation as to Gerst are contained in paragraphs 19 through 29 of **Doc. 27.** Plaintiff alleges that he saw Gerst, a physician's assistant, on January 30, 2003, for vomiting and stomach and chest pain. Gerst prescribed Tagamet. On February 10, 2003, he again saw Gerst, who told him "very aggressively" not to put in any more requests for treatment, and told him that if Tagamet didn't work, nothing would. Plaintiff was seen again by Gerst on March 10 and March 24, 2003, but Gerst was hostile towards him and did little to treat him. Plaintiff asked to be seen by a different doctor, and Gerst asked plaintiff to leave his office. On March 30, 2003, plaintiff was seen by Dr. Doughty.

Dr. Doughty referred plaintiff to an outside specialist, who saw plaintiff on April 10, 2003. The outside specialist diagnosed GERD (gastroesophageal reflux disease), and prescribed Prilosec. He said he wanted to see plaintiff again in six weeks, but a follow-up visit was refused. **¶30 - 34.**

The specific allegations as to Dr. Ahmed are that plaintiff was seen by Dr. Ahmed on November 4, 2003, and that the doctor prescribed Reglan. Plaintiff had a bad reaction to the drug. He wrote a grievance about that, but did not get a reply. ¶40 - 43. He claims that Dr. Ahmed discontinued the medication that worked for him, and refused his request for Zantac. Ex. X, attached to **Doc. 27.** He also alleges that Dr. Ahmed denied him a follow-up visit to the outside specialist and "went against a medical specialist's diagnosis." ¶58.

## Grounds for Summary Judgment

Defendants argue that they are entitled to summary judgment because the undisputed facts show that they were not deliberately indifferent to plaintiff's serious medical needs. Rather, the facts demonstrate only a difference of opinion about the appropriate course of treatment.

## Standard for Summary Judgment

Summary judgment is appropriate under **Fed.R.Civ.P. 56** where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." **Fed.R.Civ.P. 56(c);  see** *Celotex Corp. v. Catrett***, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552 (1986).** The evidence is construed in the light most favorable to the non-moving party and all justifiable inferences are drawn in favor of that party. **See,** *Anderson v. Liberty Lobby, Inc.***, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513-14 (1986).** Once the moving party has produced evidence to show that he or she is entitled to summary judgment, the non-moving party must affirmatively demonstrate that a genuine issue of material fact remains for trial. *Johnson v. City of Fort Wayne*, **91 F.3d 922, 931 (7th Cir. 1996).**

In responding to a summary judgment motion, the non-moving party may not simply reiterate the allegations contained in the pleadings; more substantial evidence must be presented

3

at this stage. Moreover, a genuine issue of material fact is not shown by the mere existence of "some alleged factual dispute between the parties," *Anderson*, **477 U.S. at 247**, or by "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, **475 U.S. 574, 586 (1986)**. Rather, a genuine issue of material fact exists only if "a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Anderson*, **477 U.S. at 252, 106 S.Ct. at 2512.**

Summary judgment is not barred by the mere existence of some factual dispute. *Anderson*, **477 U.S. at 248; see also,** *JPM Inc. v. John Deere Industrial Equipment Company*, **94 F.3d 270, 273 (7th Cir. 1996).** Only disputes as to facts that might affect the outcome of the suit in light of the substantive law are sufficient to defeat summary judgment. Disputes as to irrelevant or unnecessary facts do not preclude summary judgment. *Clifton v. Schafer*, **969 F.2d 278, 281 (7th Cir. 1992).**

Plaintiff is a *pro se* inmate, and his pleadings must be liberally construed. *Duncan v.Duckworth*, **644 F.2d 653, 655 (7th Cir.1981).**

### Analysis

In order to prevail on his constitutional claim, plaintiff must satisfy the two-part test enunciated in *Farmer v. Brennan*, **511 U.S. 825, 834, 114 S.Ct. 1970 (1994)**. The test has an objective and a subjective component. That is, plaintiff must show (1) his condition was objectively serious, and (2) the defendant acted with deliberate indifference, which is a subjective standard. *Reed v. McBride*, **178 F. 3d 849, 852 (7th Cir. 1999).** Liability under 42 U.S.C. §1983 is personal; there is no liability unless the defendant "caused or participated" in the deprivation of a constitutional right. *Vance v. Peters*, **97 F.3d 987, 991 (7th Cir. 1996)**. Thus, the two-prong *Farmer* test must be satisfied as to each defendant.

A condition is objectively serious if "failure to treat [it] could result in further significant

4

injury or unnecessary and wanton infliction of pain." ***Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir.1997)**.

The subjective prong of the *Farmer* test requires that plaintiff show that defendant acted with a sufficiently culpable state of mind, "something akin to criminal recklessness." ***Norfleet v. Webster*, 439 F.3d 392, 397 (7th Cir. 2006)**. Negligence or medical malpractice does not meet this standard. ***Id.*, at 396**; *Estelle*, **97 S. Ct. at 292**; ***Wood v. Woracheck*, 618 F.2d 1225 (7th Cir. 1980)**. Likewise, the provision of a course of treatment other than that preferred by the inmate will not create liability. *Estelle*, **97 S. Ct. at 293; *Burns v. Head Jailor*, 576 F. Supp. 618 (N.D. Ill. 1984).** An inmate has no right to a particular course of treatment of his choosing. ***Meriweather v. Faulkner*, 821 F.2d 408, 413 (7th Cir. 1987).**

An inmate is not constitutionally entitled to "unqualified access to healthcare" or to the best care possible; rather, he is entitled only to "adequate medical care." ***Johnson v. Doughty*, 433 F.3d 1001, 1013 (7th Cir. 2006)**. It is proper to consider the "cost of treatment alternatives" in "determining what constitutes adequate, minimum-level medical care." *Id.*

## Analysis

It is clear that the record establishes nothing more than a disagreement about the appropriate course of treatment.

The medical records from March 1, 2002, through December 31, 2005, are attached to **Doc. 125** as **Exhibit A.** These records indicate that plaintiff was seen on numerous occasions for complaints of epigastric pain, nausea, and vomiting beginning in the summer of 2002. He was seen by Dr. Kumar and by Dr. Doughty between the summer of 2002 and January of 2003. Both indicated that he had gastritis and prescribed Tagamet, Maalox, and Pepto-Bismal. Ex. A, pp. 10 - 25. Neither Dr. Kumar nor Dr. Doughty are named as defendants.

5

In January, February, and March, 2003, plaintiff was seen by defendant Gerst. Gerst is a physician's assistant. Gerst's notes indicate that he discussed the case with Dr. Feinerman, who instructed him to increase the dosage of Tagamet. Ex. A, p. 27. Gerst saw plaintiff again in March, 2003, and was again instructed by Dr. Feinerman as to treatment. Ex. A, p. 32.

Plaintiff was again seen by Dr. Doughty, who referred him for an outside consultation. He was seen by an outside specialist in April, 2003, who diagnosed GERD and prescribed Prilosec. Ex. A, p. 35.

Plaintiff continued to complain of pain and heartburn and vomiting. He continued to be seen on a regular basis, sometimes two times a month, and was prescribed various medications, including Zantac, Reglan, and Tagamet. Ex. A, pp. 39-49. Plaintiff protested when the prescription for Prilosec was discontinued.

The first visit with Dr. Ahmed for GI complaints was on September 23, 2003. Dr. Ahmed noted that he discussed with plaintiff the fact that the FDA had not approved the use of Prilosec beyond twelve weeks. Dr. Ahmed noted that plaintiff became argumentative because of disagreement with the treatment plan. Ex. A, p. 44.

On December 4, 2003, Dr. Ahmed noted that plaintiff had gained twenty pounds despite his complaints of repeated vomiting, and that he suspected "malingering." Ex. A, p. 54. On December 14, 2003, Dr. Ahmed saw plaintiff, who had been asking for Zantac. Dr. Ahmed explained that Zantac is bioequivalent to Tagamet at the dose prescribed, and questioned whether plaintiff wanted Zantac to sell. Ex. A, p. 70.

Plaintiff was admitted to the HCU for "close medical supervision" in December, 2003. Ex. A, 58 - 71.

On December 16, 2003, Dr. Ahmed did an upper GI series, which showed a small sliding

hiatal hernia. He prescribed Prilosec for twelve weeks, to be followed by Tagamet maintenance. Ex. A, p. 74.

Attached to the motion as Exhibit C is the affidavit of Dr. Ahmed, in which he states that he first saw plaintiff for GI complaints in September, 2003. Dr. Ahmed performed an upper GI series and diagnosed a hiatal hernia in December, 2003. Dr. Ahmed explains in his affidavit that the symptoms of a hiatal hernia (heartburn) are caused by stomach acid being pushed into the esophagus. The symptoms of a hiatal hernia are the same as the symptoms of GERD (gastroesophageal reflux disease), and are treated the same way. Prilosec, Zantac, Tagamet, and antacids are all recommended for symptoms of both hiatal hernia and GERD. Dr. Ahmed states that plaintiff does not meet the criteria for surgery, and he was appropriately treated with medication. Lastly, Tagamet in the dose prescribed for plaintiff is bioequivalent to Zantac, and, in 2003, the FDA did not recommend prescribing Prilosec for more than twelve weeks continuously.

It is evident from a review of the medical records and of Dr. Ahmed's affidavit that plaintiff has presented nothing more than a disagreement about the course of treatment. He admits that he was seen by health care providers numerous times for his complaints and was prescribed medication. See, Doc. 131, pp. 11; Doc. 125, Ex. B, p. 18. Plaintiff complains that he was not sent back for a follow-up visit with the outside specialist, but it is unclear what difference that would have made. The specialist's impression was that plaintiff had GERD. Dr. Ahmed first saw plaintiff in September, 2003, and did the test which showed the hernia in December, 2003. The treatment is the same for both conditions. Plaintiff agrees with Dr. Ahmed's diagnosis, but, as he testified in his deposition, he wanted different medication. Doc. 125, Ex. B, pp. 19, 39. Plaintiff testified that both Zantac and Prilosec worked for him, but that

7

Zantac worked better. Ex. B, pp. 34-37.

Plaintiff was transferred from Menard in September, 2006. He testified that he has not had surgery for his hernia, and is still being treated with medication, either Zantac or Prilosec. Ex. B, pp. 38-39.

As to Gerst, plaintiff admitted in his deposition that he does not have a "valid claim" against him. Ex. B, p. 20. He is correct. There is no indication that Gerst, who is not a physician, did anything other than carry out orders given by physicians.

Plaintiff relies on *Greeno v. Daley*, **414 F.3d 645 (7th Cir. 2005)**, for his argument that Dr. Ahmed was deliberately indifferent, but that case actually supports defendant's position. In *Greeno*, the plaintiff complained of heartburn and vomiting beginning in December of 1994. In July, 1995, a doctor prescribed Maalox and noted the need to rule out an ulcer or GERD. He was later prescribed Tagamet also. No testing was done until April, 1997, when he was finally seen by a specialist who performed an endoscopy and diagnosed an ulcer. The doctor prescribed Prilosec, which resolved his symptoms. *Greeno*, **414 F.3d. at 649- 651.**

The Seventh Circuit reversed summary judgment as to a doctor, a nurse, and the director the Bureau of Health Services because it found that there were issues of fact as to whether those defendants, who had done nothing to address the plaintiff's complaints for almost two years, had been deliberately indifferent. "The possibility of an ulcer was first noted in Greeno's chart in August 1995. For the next year-and-a-half the defendants doggedly persisted in a course of treatment known to be ineffective, behavior that we have recognized as a violation of the Eight Amendment." *Greeno*, **414 F.3d at 655.** The Seventh Circuit found that the nonmedical, administrative employees who simply handled the plaintiff's complaints and grievances were entitled to summary judgment because they relied on the medical staff to provide treatment.

8

***Greeno***, **414 F.3d at 656-657.**

*Greeno* does not help plaintiff here. First, in *Greeno*, the plaintiff sued the medical staff who had been seeing him from the time the possibility of an ulcer was first noted to the time that it was finally addressed and diagnosed. In contrast, Toliver has sued only Gerst, who was not a physician and only saw him a few times, and Dr. Ahmed, who saw him for the first time in September, 2003. Dr. Ahmed did the upper GI and diagnosed the hernia less than three months after he first saw plaintiff. Although Dr. Ahmed was the Medical Director at Menard, he is not liable for the acts of the other healthcare providers who treated plaintiff, as there is no respondeat superior liability in a Section 1983 case. ***Perkins v. Lawson*, 312 F.3d 872, 875 (7th Cir. 2002).**

Secondly, there is no indication on the record in this case that Dr. Ahmed (or anyone else) persisted in a course of treatment that they knew to be ineffective. Dr. Ahmed's affidavit establishes that GERD and hiatal hernia both cause heartburn, which is appropriately treated with Prilosec, Zantac, Tagamet, and antacids. Those are the medications that were given to plaintiff. Dr. Ahmed did not believe that surgery was indicated, and, in fact, plaintiff has not had surgery to this day for his hernia. Plaintiff's assertion that he should have been given Zantac instead of Tagamet is a disagreement about the course of treatment, which does not equal deliberate indifference. Further, Tagamet at the dose prescribed to plaintiff is bioequivalent to Zantac. "To infer deliberate indifference on the basis of a physician's treatment decision, the decision must be so far afield of accepted professional standards as to raise the inference that it was not actually based on a medical judgment." ***Norfleet v. Webster*, 439 F.3d 392, 396 (7th Cir. 2006)**. No such inference can be drawn from the record here.

## Recommendation

This court recommends that the Motion for Summary Judgment filed by defendants

9

Ahmed and Gerst **(Doc. 125)** be **GRANTED**.

If this recommendation is adopted in its entirety, no claims will remain pending against these defendants. If the separate recommendation submitted on defendant Grubman's motion for summary judgment is also accepted, no claims will remain pending.

Objections to this Report and Recommendation must be filed on or before February 25, 2008.

**Submitted: February 6, 2008.**

**s/ Clifford J. Proud**
**CLIFFORD J. PROUD**
**UNITED STATES MAGISTRATE JUDGE**
